# United States Court of Appeals
## For the First Circuit

No. 13-2549

LIZZETTE M. BOURET-ECHEVARRÍA, in her own capacity and in
representation of her minor children; N.V.-B., minor; C.V.-B,
minor; C.V.-B., minor,
Plaintiffs, Appellants,

JOSÉ ANTONIO MONTANO; DIEGO VIDAL-LAMPÓN; IRMA IRIS
VIDAL-GONZÁLEZ; MARINIEVES VIDAL-GONZÁLEZ; DIEGO VIDAL-SHIRLEY,
Plaintiffs,

v.

CARIBBEAN AVIATION MAINTENANCE CORP.; ROBINSON HELICOPTER
COMPANY; CHARTIS INSURANCE COMPANY OF PUERTO RICO, a/k/a American
International Insurance Company of Puerto Rico; PATHFINDER
INDEMNITY COMPANY LTD.; D&O AVIATION, INC.,
Defendants, Appellees,

INSURANCE COMPANIES X, Y, AND Z; CORPORATIONS A, B AND C; JOHN
DOE; RICHARD ROE; ABC INSURANCE COMPANIES; DEF INSURANCE COMPANY;
JANE DOE, CORP.; JKL INSURANCE COMPANY,
Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella, Lipez, and Barron,
Circuit Judges.

David P. Angueira for appellants.
Tim A. Goetz, with whom Cathrine E. Tauscher was on brief, for
appellee Robinson Helicopter Company. Tim A. Goetz, with whom
Cathrine E. Tauscher was on brief, for appellee Robinson Helicopter
Company.
Louis R. Martínez for appellees Caribbean Aviation Maintenance
Corp. and Chartis Insurance Company of Puerto Rico.

April 24, 2015

**LIPEZ, <u>Circuit Judge</u>**.  This case arose from a helicopter crash in November 2008 that killed a passenger in the helicopter, Diego Vidal-Gonzalez. The decedent's widow, Dr. Lizzette Bouret-Echevarria, and her three minor children (together "appellants"), brought a products liability action against the helicopter's manufacturer and repair company. The jury absolved all defendants of liability.

Appellants claim that eighteen months after the jury returned its verdict, they were told that the verdict was influenced by the jurors' improper knowledge of a confidential settlement offer. In this appeal, they challenge the district court's rejection of their request for an evidentiary hearing, pursuant to Federal Rule of Civil Procedure 60(b)(6), to explore the alleged jury taint.

In denying this request, the district court miscalculated the timeliness of the motion, did not assume, as required by law, the truth of fact-specific statements set forth in affidavits supporting the Rule 60(b)(6) motion, and did not appreciate the inability of appellants, under the unusual circumstances here, to avoid reliance on hearsay in seeking Rule 60(b)(6) relief. Hence, we conclude that the court abused its discretion in denying the motion for 60(b) relief without holding an evidentiary hearing. We therefore vacate the court's order and remand for such a hearing.

## A. Background

In the underlying products liability suit, appellants filed a wrongful death action against Robinson Helicopter Company ("Robinson"), the manufacturer of the helicopter, and Carribean Aviation Maintenance Corp. (the "CAM defendants"), who repaired the helicopter. The products liability case was tried in February 2012, with Attorney Carlos J. Morales-Bauza ("Attorney Morales"), a San Juan attorney, representing appellants.

Appellants assert that, prior to jury deliberations, Attorney Morales received a confidential settlement offer of $3.5 million, comprised of $3 million from one defendant and $500,000 from another defendant. The CAM defendants acknowledge that they unsuccessfully attempted to settle with appellants, but they deny that either amount reflects their settlement offer. Robinson admits that settlement was discussed at various times, but asserts it made no formal settlement offer and that it was unaware of the settlement amount offered by the CAM defendants. Appellants rejected the offer and proceeded to trial. On March 16, 2012, the jury returned a unanimous verdict finding that the CAM defendants were not negligent in their repair of the helicopter, and that Robinson's design of the helicopter was not defective. Final judgment was entered on March 19, 2012. Appellants filed a motion for a new trial, which was denied on May 9, 2012.

Sixteen months later, on September 4, 2013, appellants filed a motion pursuant to Federal Rule of Civil Procedure 60(b)(6) seeking an evidentiary hearing to assess an allegation that the introduction of extraneous prejudicial information, namely appellants' rejection of the settlement offer, was improperly injected into jury deliberations. In support of their motion, appellants submitted affidavits from Attorney David P. Angueira ("Attorney Angueira") and Lizzette Bouret-Echevarria, the widow of the passenger killed in the helicopter crash. The affidavits reported that Luis Irizarry, an aviation expert witness who testified on behalf of appellants during their trial, was the source of the allegation of juror misconduct. In May 2013, subsequent to appellants' trial, Irizarry provided expert services in an unrelated aviation case where he allegedly met an individual who claimed to be the employer of a juror in appellants' case. The employer told Irizarry that his employee informed him that the jury declined to award appellant any money damages because they knew she had been offered and rejected a $3.5 million settlement.

Irizarry communicated this information to appellants' trial counsel, Attorney Morales, who in turn informed Bouret-Echevarria. She then retained Attorney Angueira, a Boston attorney, and informed him of the potential jury misconduct disclosures made by Attorney Morales. At the time, Attorney Angueira was not admitted to the Puerto Rico Bar. He asked appellants to inquire

-5-

whether Attorney Morales would agree to act as co-counsel in order to file post-judgment motions and present evidence of jury misconduct to the court. Within twenty-four hours after that request was made, Attorney Morales sent a letter to appellants indicating that he was immediately withdrawing from the case. Attorney Angueira then sought other local counsel to assist him.

Attorney Angueira also called Irizarry in an attempt to confirm the information reported to appellants. In his affidavit, Attorney Angueira states that Irizarry told him he would not be able to speak with him without the permission of Attorney Morales. Attorney Angueira then called Attorney Morales and left a message asking that he return the call. Attorney Morales never returned the call.

## B. District Court's Denial of the Rule 60(b)(6) Motion

The district court denied appellants' Rule 60(b)(6) motion, finding that the eighteen-month period between the entry of final judgment and the filing of the motion made the motion untimely, and that the materials filed in support of the motion were insufficient. The court stated, "[w]hile there is no specific limit under Rule 60(b)(6), seeking relief eighteen months after final judgment pushes against reasonableness." The court went on to state that "Plaintiffs present to the court only hearsay evidence of the supposed tainted jury deliberations" and that the two affidavits brought in support of the motion were "insufficient to

push Plaintiffs' claims beyond the daunting threshold required by Rule 60(b). If this material were sufficient to force a court to hold an evidentiary hearing, the court would be potentially required in any civil case to grant an evidentiary hearing following a jury verdict based on mere rumors, regardless of how much time had elapsed since judgment. Rule 60(b) is not satisfied that easily."[1] Appellants filed this timely appeal.

## II.

### A. The Applicable Subsection of Rule 60(b)

Rule 60(b) grants federal courts the power to vacate judgments "whenever such action is appropriate to accomplish

---

[1] The district court also denied the Rule 60(b) motion on the basis of its analysis of a complaint by appellants in their motion about the conduct of Juror Number 4. At trial, Bouret-Echevarria was accompanied by her cousin, Richard Cora, on several occasions. Juror Number 4 informed the court that he knew Cora, prompting the court to hold a hearing, with counsel present, to inquire into possible bias. Juror Number 4 assured the court that his knowledge of Cora would not cause bias, and he remained on the panel without objection. In their Rule 60(b)(6) motion, appellants argued that at some point after the hearing (no date is provided), they learned that Juror Number 4 was in fact a former employee of Cora and was terminated for unsatisfactory work performance, a fact that he failed to disclose to the court. The court stated in its order denying the Rule 60(b) motion that while Juror Number 4 "may not have informed Plaintiffs that Juror Number 4 had purported knowledge of broken down settlement discussions...it did put Plaintiffs on notice that this juror knew someone involved in this litigation." The suggestion of the district court that Juror Number 4 might have been the one who had an awareness of the settlement discussions, and perhaps introduced that awareness into the jury's deliberations, has no grounding in the record. Appellants' Rule 60(b)(6) motion does not link Juror Number 4 to the asserted disclosure of the settlement information. Appellants pointed to his relationship with Cora as an <u>independent</u> basis for the motion. They do not pursue that independent theory on appeal.

justice." <u>Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59</u> v. <u>Superline Transp. Co.</u>, 953 F.2d 17, 19 (1st Cir. 1992) (internal citation omitted). Rule 60(b) recites six reasons justifying relief from final judgment. Two are at issue here. Under Rule 60(b)(3), a district court may vacate a judgment for "fraud . . ., misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Rule 60(b)(6) is a catchall provision that provides relief for "any other reason" not otherwise covered by (b)(1)-(5). Fed. R. Civ. P. 60(b)(6).

The parties disagree about which subsection of Rule 60(b) applies in this case. If the motion should have been brought pursuant to 60(b)(3), as appellees contend, it would be time-barred because the motion was brought more than one year after the entry of final judgment. <u>See</u> Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time -- and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."). If, as appellants argue, the motion was proper pursuant to Rule 60(b)(6), the timing is subject to a more lenient, "reasonable" standard. <u>Liljeberg</u> v. <u>Health Servs. Acquisition Corp.</u>, 486 U.S. 847, 863 (1988). Appellees argue that the motion falls squarely within the parameters of subsection (3) because it alleged misconduct by the appellees. They point to appellants' insinuation in their motion that appellees were the likely source of the settlement offer

information because they would have benefitted from its disclosure to the jury.[2]

While appellants suggest in their Rule 60(b)(6) motion that the information of the settlement offer could have been leaked by appellees, they do not contend that appellees did in fact provide this information. Rather, the bulk of appellants' Rule 60(b) motion focuses on the assertion that the jury was tainted by its knowledge of a confidential settlement offer and that it improperly based its decision on that information. In the absence of any provision of Rule 60(b) dealing explicitly with juror misconduct, appellants' motion was appropriately brought, and the district court properly viewed it, pursuant to Rule 60(b)(6).

## B. Rule 60(b)(6) Factors

Rule 60(b)(6) grants federal courts "broad authority" to vacate final judgments provided that the motion is made within a reasonable time. Liljeberg, 486 U.S. at 863. The Supreme Court has interpreted Rule 60(b)(6)'s "any other reason justifying relief" as requiring a showing of "'extraordinary circumstances' suggesting that the party is faultless in the delay." Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe, 257 F.3d 58, 67

---

[2] In their motion to the district court appellants stated, "there is an undeniable inference that the only sources of this [settlement offer] information must have been provided by persons who would have benefitted from the disclosure of this information. There would be no benefit to the plaintiff by disclosing that she had rejected a three and a half million dollar offer. Conversely, such a disclosure would benefit the defense."

(1st Cir. 2001) (quoting <u>Pioneer Inv. Servs. Co.</u> v. <u>Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 393 (1993)). The high threshold required by Rule 60(b)(6) reflects the need to balance finality of judgments with the need to examine possible flaws in the judgments. <u>See</u> <u>Paul Revere Variable Annuity Ins. Co.</u> v. <u>Zang</u>, 248 F.3d 1, 5 (1st Cir. 2001) ("'There must be an end to litigation someday' and therefore district courts must weigh the reasons advanced for reopening the judgment against the desire to achieve finality in litigation.") (quoting <u>Ackermann</u> v. <u>United States</u>, 340 U.S. 193, 198 (1950)).

To balance the "competing policies" of finality of judgments and resolving litigation on the merits, courts considering motions under Rule 60(b)(6) ordinarily examine four factors: (1) the motion's timeliness, (2) whether exceptional circumstances justify extraordinary relief, (3) whether the movant can show a potentially meritorious claim or defense, which, if proven, could bring her success at trial, and (4) the likelihood of unfair prejudice to the opposing party. <u>Superline</u>, 953 F.2d at 20. However, "[t]his compendium is neither exclusive nor rigidly applied. Rather, the listed factors are incorporated into a holistic appraisal of the circumstances." <u>Ungar</u> v. <u>Palestine Liberation Org.</u>, 599 F.3d 79, 83-84 (1st Cir. 2010) (internal citation omitted). "[T]here is no ironclad rule requiring an in-depth, multi-factored analysis in every case. Sometimes one

-10-

factor predominates to such an extent that it inexorably dictates the result." Id. at 86.

We review the denial of a Rule 60(b) motion for abuse of discretion. See Ahmed v. Rosenblatt, 118 F.3d 886, 891 (1st Cir. 1997). "Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. 1988).

**1. Timeliness**

Motions brought pursuant to Rule 60(b)(6) are subject to a "reasonable" time limit, and the determination of what is "reasonable" depends upon the circumstances of each case. See United States v. Baus, 834 F.2d 1114, 1121 (1st Cir. 1987) (stating that "[i]n determining temporal reasonableness under subsection (6), we must review the specific circumstances of the case") (internal quotation marks omitted). The determination of what constitutes a "reasonable" period of time requires a district court to examine when a movant could have filed a Rule 60(b)(6) motion. See Baus, 834 F.2d at 1121.

The district court found appellants' motion pushed "against the boundaries of reasonableness." In its order, the court referred to a period of eighteen months, marking the time between

the entry of final judgment and the time when appellants brought their Rule 60(b)(6) motion. Appellants contend that the appropriate time frame for the district court to evaluate was three months and thirteen days, the period from when appellants first learned of the potential jury misconduct to the time they filed their Rule 60(b)(6) motion.[3]

Courts evaluating what constitutes a "reasonable" period of time for purposes of Rule 60(b) measure the time at which a movant could have filed his or her Rule 60(b)(6) motion against when he or she did in fact file the motion. See, eg., Klapprott v. United States, 335 U.S. 601, 607-16 (1949) (holding that a four-year gap was timely where a naturalized citizen sought to set aside a default judgment of denaturalization entered while he was in prison, ill, and without funds to obtain counsel); Cotto v. United States, 993 F.2d 274, 280 (1st Cir. 1993) (finding that a sixteen-month delay was unreasonable because the pertinent event, a settlement, occurred two months after the entry of the order of dismissal, and appellants had "no valid excuse for having dawdled an additional fourteen months before alerting the district court to the changed circumstances"); Baus, 834 F.2d at 1122 (finding a five-year lapse timely because the moving party had no reason to

---

[3] In his affidavit, Attorney Angueira states that Attorney Morales informed Bouret-Echevarria about the alleged juror misconduct on May 22, 2013, and that Bouret-Echevarria informed Attorney Angueira the following day. The information was ultimately brought to the district court's attention on September 4, 2013.

file a Rule 60(b)(6) motion until the opposing party changed its mind about executing on a judgment).[4]

The district court, however, measured the reasonableness of appellants' delay in bringing forth their Rule 60(b)(6) motion from the entry of final judgment, not from the time that appellants first learned of the allegations of juror misconduct. During this less than four-month period, Attorney Angueira was actively attempting to obtain pro hac vice admission to Puerto Rico, and to acquire more information to better substantiate the motion. He also was seeking local counsel to assist him in the wake of Attorney Morales's resignation. In addition, during this time, Irizarry informed Attorney Angueira that he would not communicate with him without Attorney Morales's permission. Attorney Angueira then attempted to contact Attorney Morales, who failed to return his

---

[4] This focus on when a party seeking 60(b)(6) relief became aware of the grounds justifying the motion is further reflected in cases from a number of other circuits. See PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 897 (2d Cir. 1983) (finding a one-year time lapse untimely because appellant had failed to present any "persuasive reasons to justify the delay of almost one year in moving for amendment"); United States v. Holtzman, 762 F.2d 720, 725 (9th Cir. 1985) (finding a five-year delay permissible where litigant reasonably interpreted an injunction to authorize litigant's conduct and timely relief was sought upon receipt of notice to the contrary); J.D. Pharm. Distrib., Inc. v. Save-On Drugs & Cosmetics Corp., 893 F.2d 1201, 1207 (11th Cir. 1990) (relief from judgment granted because party never served with requests for admissions or motion for summary judgment); Carvajal v. Drug Enforcement Admin., 286 F.R.D. 23, 28 (D.D.C. 2012) (finding a twenty-five month delay untimely because plaintiff waited ten-months after receiving the requisite information to file the motion).

call. In sum, during the period between when appellants first learned of the alleged misconduct and when they filed their Rule 60(b)(6) motion, appellants made diligent efforts to strengthen the basis for their motion. As in Baus, the allegations referring to the delay -- namely that Attorney Angueira was actively seeking pro hac vice admission to Puerto Rico and that neither Attorney Morales nor Irizarry would speak with Attorney Angueira -- were "verified and uncontested." 834 F.3d at 1122.

A reasonableness inquiry evaluates whether a movant acted promptly when put on notice of a potential claim. In making its determination that eighteen months was unreasonable, the district court did not address the fact that the earliest appellants could have brought their Rule 60(b)(6) motion was May 22, 2013, the day they learned of the potential misconduct. Nor did it recognize that during the three-month and thirteen-day period before the filing of the 60(b) motion, appellants' counsel was actively attempting to substantiate the motion and find local counsel with whom to associate. In failing to evaluate the appropriate time frame, and all that was done by appellants within that time frame to prepare to file the 60(b) motion, the district court committed a legal error. In these circumstances, appellants' timing was reasonable.

**2. Exceptional Circumstances**

Relief under Rule 60(b)(6) requires a showing that exceptional circumstances justify extraordinary relief. Superline,

-14-

953 F.2d at 20. If a jury is aware of and bases its decision on knowledge of a confidential settlement offer, there has been a violation of due process. See Smith v. Phillips, 455 U.S. 209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.").

In her affidavit, Bouret-Echevarria stated that Attorney Morales told her that Irizarry had been informed by an employer of one of the jurors that the jury decided against Bouret-Echevarria because they were aware that she rejected a $3.5 million settlement offer.[5] If that allegation of juror awareness of the confidential

---

[5] Specifically, Bouret-Echevarria describes the interaction with Attorney Morales as follows: "In June 2013, I received a telephone call from Mr. Morales advising me that he had some very important information to share with me. I was advised by attorney Morales that he had learned from Luis Irizarry that he had potential evidence suggesting that there may have been improper jury deliberations in my case. Mr. Morales advised me that he had been told by Mr. Irizarry that while attending an inspection on an unrelated case another individual had reported to Mr. Irizarry that he employed one of the jurors in my case. This individual told Mr. Irizarry that he had been told by this juror that the reason that the jury decided against me was that they did not like me and that they were aware that I had turned down an offer in the amount of $3.5 million. To my understanding the offer that had been made to me was confidential and certainly should not have been provided to any of the jurors.

Mr. Morales also advised me that we needed to conduct an investigation immediately to obtain this evidence and report it to the court. Out of concern, I then communicated directly with Mr. Irizarry and confirmed the information reported to me by Mr. Morales. I then contacted David Angueira to discuss these matters with him. Mr. Angueira advised me that this is a matter requiring the court's involvement as soon as possible. Mr. Angueira also

settlement offer is true, it is an exceptional circumstance that might justify the extraordinary relief of vacating the finality of a judgment.

In recognition of the due process implications of a tainted jury, and the need to maintain juror privacy, our law provides for the exploration of the influence of extraneous information on the deliberations of a jury under controlled circumstances. Federal Rule of Evidence 606(b) states that "a juror may testify about whether extraneous prejudicial information was improperly brought to the jury's attention" or whether any "outside influence was improperly brought to bear upon any juror." If the existence of external influences is established through such testimony, the court must determine whether such extraneous information was prejudicial by determining its "probable effect on a hypothetical average juror." United States v. Boylan, 898 F.2d 230, 262 (1st Cir. 1990) (internal citation omitted); see also id. at 261 (stating that there is a presumption of prejudice when

---

asked me to communicate with Mr. Morales to authorize him to share this information with attorney Angueira so that he can co-counsel with Mr. Morales and report this matter to the court. I immediately authorized Mr. Morales to discuss this matter with my attorney, David P. Angueira. After my communication with Mr. Morales, I received a notice of withdrawal from him. I was shocked and deeply disturbed by this notice of withdrawal which Mr. Morales had not even discussed with me. I then immediately communicated the notice of withdrawal to Mr. Angueira seeking his advice as to how we should proceed."

"third party communication . . . directly injects itself into the jury process").[6]

### 3. Potentially Meritorious Claim

"[A]s a precondition to relief under Rule 60(b), [a party] must give the trial court reason to believe that vacating the judgment will not be an empty exercise . . . .'motions for relief under Rule 60(b) are not to be granted unless the movant can demonstrate a meritorious claim or defense.'" Superline, 953 F.2d at 20 (quoting Lepkowski v. U.S. Dep't of Treasury, 804 F.2d 1310, 1314 (D.C. Cir. 1986)).

Although the jury found neither negligence on the part of the CAM defendants nor a product defect on the part of Robinson, this case had enough merit to get to the jury. If the jury knew of the settlement offer when it rejected appellants' case, we cannot say that a retrial without that proscribed information would be an empty exercise.

### 4. Unfair Prejudice

The CAM defendants argue that granting appellants' Rule 60(b)(6) motion would unfairly prejudice them. They would have to fly witnesses into Puerto Rico once again; appellants could prepare

---

[6] Boylan involved an assessment of juror misconduct in the context of a direct criminal appeal. Nevertheless, we see no reason why this principle for assessing the significance of juror misconduct should not apply here where the district court would be required to assess what likely effect juror misconduct, if any, had on a jury verdict in deciding whether to grant 60(b)(6) relief.

their case knowing the defendants' trial strategy; and jurors would have access to the public documents referring to offered settlement amounts that signal an admission of guilt.

Most of these claims of unfair prejudice appear to be nothing more than the usual inconveniences any party faces when forced to re-litigate. See United States v. One Parcel of Real Prop., 763 F.2d 181, 183 (5th Cir. 1985) (explaining that requiring a party to re-litigate an action does not amount to prejudice). We are sympathetic to appellees' burdens. They do not, however, amount to unfair prejudice. See Coon v. Grenier, 867 F.2d 73, 77 (1st Cir. 1989) (refusing to infer prejudice simply from the passage of time, and requiring the party alleging prejudice to instead show evidence of specific prejudice, such as death of witnesses, dimmed memories that are beyond refreshment, loss of evidence, or that some discovery scheme "has been thwarted"). Furthermore, we do not understand the CAM defendants' concern about juror access to the settlement offer referenced in documents now filed in this case. Information regarding settlement offers remains inadmissible. See Fed. R. Evid. 408. An appropriately focused voir dire process could identify and eliminate jurors with knowledge of any settlement offers.

## 5. Additional Considerations

Although we have now discussed the four factors that we ordinarily examine when considering Rule 60(b)(6) motions, we

cannot complete our analysis of the district court's application of those factors to appellants' request for an evidentiary hearing without examining the district court's treatment of the charge that is at the core of both factor 2 (exceptional circumstances justifying extraordinary relief) and factor 3 (a potentially meritorious claim) -- the allegation that jurors were aware of settlement discussions and used that awareness to reject appellants' claims against defendants. See Ungar, 599 F.3d at 83-84 (stating that the four factors are "neither exclusive nor rigidly applied," but are "incorporated into a holistic appraisal of the circumstances"). If there is substance to that allegation, appellants have a weighty claim for 60(b)(6) relief. If that allegation is insubstantial, there is no case for such relief.

In its order denying appellants' motion, the district court ruled that the affidavits submitted by appellants in support of their Rule 60(b)(6) motion were "insufficient to push Plaintiffs' claims beyond the daunting threshold required by Rule 60(b)," and that if they "were sufficient to force a court to hold an evidentiary hearing, the court would be potentially required in any civil case to grant an evidentiary hearing following a jury verdict based on mere rumors, regardless of how much time had elapsed since judgment. Rule 60(b) is not satisfied that easily."[7]

---

[7] Citing Cotto v. United States, the district court also stated that "Rule 60(b)(6) may not be used to escape the consequences of failure to take a timely appeal." To the extent

In making this judgment, the district court failed to recognize a proposition of law that applies to a district court's consideration of allegations underlying a motion for Rule 60(b)(6) relief. "In the first instance, an inquiring court should assume the truth of fact-specific statements contained in a Rule 60(b)(6) motion." Superline, 953 F.2d at 18. Important portions of Bouret-Echevarria's motion were fact-specific.

Bouret-Echevarria states in her affidavit that Attorney Morales informed her that Irizarry had told him that a juror's employer had told Irizarry that the jury decided against Bouret-Echevarria because "they did not like me and that they were aware that I had turned down an offer in the amount of $3.5 million." Morales urged her "to conduct an investigation immediately [of the juror misconduct] to obtain this evidence and report it to the court." Bouret-Echevarria further states that she "communicated directly with Mr. Irizarry and confirmed the information reported to me by Mr. Morales." In light of these "fact-specific statements," the district court was required to assume that

---

that the court was suggesting Bouret-Echevarria should be faulted for not taking a direct appeal from the adverse decision of the jury, such a suggestion is wholly unfair. Bouret-Echevarria had no awareness of the allegations of jury misconduct prior to June 2013, well after the completion of the jury trial. Moreover, as to the other issues generated by the jury trial, Angueira explained in his affidavit why these issues did not result in an appeal: "I determined based upon my review [of the trial proceedings] that there were insufficient grounds upon which to file an appeal." Bouret-Echevarria cannot be faulted for declining to appeal when her attorney told her there were insufficient grounds to do so.

Attorney Morales reported the potential misconduct to Bouret-Echevarria and that Irizarry confirmed the report to Bouret-Echevarria. Superline, 953 F.2d at 18. These actions by her attorney and an expert witness who testified in the trial of her claims (these are not random people) reflected their belief initially that the reports of juror misconduct were substantial enough to merit further investigation. These fact-specific portions of Bouret-Echevarria's motion could not be dismissed as mere rumor. They had a probative weight that the district court ignored.

To be sure, whether juror misconduct in fact occurred was, as the district court put it, only a "rumor." There were layers of hearsay in the report of juror misconduct: an unidentified party telling Irizarry that one of the party's employees, also unidentified, was a juror in Bouret-Echevarria's trial, and that this juror told the unidentified party that the jury declined to award appellant any money damages because they knew she had been offered and rejected a $3.5 million settlement. Ordinarily, the district court would be right that such rumors, despite the concerns that they engendered in Morales and Irizarry, would not justify an evidentiary hearing. Here, however, the district court failed to appreciate the critical fact that appellants could not obtain fact-specific statements beyond the reports of Morales and Irizarry in requesting an evidentiary hearing.

-21-

Attorney Morales refused to talk to Attorney Angueira, and Irizarry, the expert witness, refused to talk to Attorney Angueira without Attorney Morales's permission. Without talking to Irizarry, appellants could not find out who the employer was who spoke to Irizarry about the juror/employee who reported the jury misconduct. Although Attorney Angueira could determine from court records the names of all of the jurors who participated in the trial, he could not contact those jurors directly because Local Rule 47(d) of the District Court Rules of Puerto Rico states, "Counsel and parties shall refrain from any post-verdict communication with jurors except under supervision of this court."[8] In short, the district court unfairly faulted appellants for failing to substantiate allegations of juror misconduct that they could not substantiate because of the refusal of the critical witnesses to speak to them and because of court rules that barred avenues of investigation.

Although we draw no conclusive inferences from the refusal of Attorney Morales and expert witness Irizarry to respond to Attorney Angueira, we find the sudden wall of silence portrayed by Attorney Angueira's affidavit troubling. Irizarry thought enough

---

[8] We note that post-verdict contact with jurors is prohibited in the First Circuit generally. See United States v. Kepreos, 759 F.2d 961, 967 (1st Cir. 1985) ("We start with the proposition that henceforth this Circuit prohibits the post-verdict interview of jurors by counsel, litigants or their agents except under the supervision of the district court, and then only in such extraordinary situations as are deemed appropriate.").

of the report of juror misconduct to report it to Attorney Morales. Attorney Morales, in turn, thought enough of it to inform his client, Bouret-Echevarria, along with the admonition that "we needed to conduct an investigation immediately to obtain this evidence and report it to the court." Then, when Bouret-Echevarria's new attorney tried to talk to Attorney Morales and Irizarry, they suddenly refused to cooperate. They may have had good reasons for their silence, or improper reasons. Without an evidentiary hearing, there is no way to know.

Hence we agree with appellants that the district court "should have convened an evidentiary hearing, questioned potential (non-juror) witnesses, including Mr. Irizarry and the juror's employer, regarding their knowledge of the information contained in Appellants' motion." That limited evidentiary hearing would be sufficient to determine the validity of Irizarry's claim that the employer had been told by his employee, who was a juror in appellants' trial, that the jury in that trial had become aware of a settlement offer to the appellants that they had rejected. If those allegations were substantiated to the court's satisfaction, it could then decide if the evidentiary hearing should be expanded to include any jurors.[9]

---

[9] In making this decision, the district court would have to consider Federal Rule of Evidence 606(b)(2)(A), which permits a juror to testify about whether "extraneous prejudicial information was improperly brought to the jury's attention." In applying 606(b)(2)(A), we have previously stated that a court should only

-23-

We recognize that any such inquiry of the jurors would be a significant step. Concerns for juror privacy are always significant. Yet, importantly, Local Rule 47(d) would permit such further inquiry under the court's supervision. If this controlled inquiry established that jurors had become aware of a settlement offer while considering a verdict, the district court would then have the facts it needed to fairly and appropriately decide the request for 60(b)(6) relief.

## III.

We hold that the district court abused its discretion in denying appellants' Rule 60(b)(6) motion because it made three mistakes in weighing the factors relevant to a request for relief under Rule 60(b)(6). Specifically, it failed to identify the proper time frame for evaluating the reasonableness of the lapse of time before appellants filed the motion; it failed to assume the truth

---

conduct an inquiry into whether such information was improperly brought to the attention of a jury when there is "substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred." United States v. Connolly, 341 F.3d 16, 34 (1st Cir. 2003) (internal citation omitted). In the present case, the district court could only make such judgments after it conducted an evidentiary hearing, first questioning Irizarry about the report that he had been told by an unidentified employer of juror misconduct in Bouret-Echevarria's trial. If Irizarry confirmed the report, the juror's employer could be called. If the employer confirmed his conversation with the juror, the juror could be called. If these inquiries confirmed that a basis for the jury's decision was their knowledge that Echevarria rejected a settlement offer, the court would have "substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred" and would therefore have a basis for questioning the jurors further pursuant to 606(b)(2)(A).

of, and accord appropriate probative weight to, the fact-specific statements contained in Bouret-Echevarria's and Attorney Angueira's affidavits that Morales and Irizarry had both informed her of reports of juror misconduct in her trial which they believed merited further investigation; and it unfairly faulted appellant for failing to elevate these reports of juror misconduct beyond the realm of rumor when, under the unusual circumstances here, she could not do so without an evidentiary hearing. See Indep. Oil & Chem. Workers of Quincy, Inc., 864 F.2d at 929 (stating that "[a]buse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.").

In finding an abuse of discretion, we understand that granting an evidentiary hearing in the context of a request for 60(b)(6) relief creates temporary uncertainty about the finality of a judgment. However, that finality remains until the court actually vacates the judgment. The evidentiary hearing does not undo it. Instead, the hearing only permits the ground for vacating the judgment -- juror misconduct -- to be fairly assessed, first with the preliminary inquiries described above, and then with the questioning of jurors if the court's findings justify it.

We do not minimize the importance of finality of judgments or protecting the privacy of jurors. Yet we must also

-25-

consider the due process values implicated by jury deliberations free of extraneous influences. Indeed, Rule 60(b)(6) exists, in part, to protect such values, and, in so doing, to "accomplish justice." <u>Klapprott</u>, 335 U.S. at 601 (stating 60(b)(6) "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice"). Inescapably, there is a tension here between the values of finality and due process. The conduct of the evidentiary hearing sought by appellants is the only fair and sensible way to accommodate that tension.

Nevertheless, influenced by the errors in law and judgment that we have identified, the district court denied the request for an evidentiary hearing, and thereby concluded that the value of due process must necessarily be sacrificed for the value of finality. That flawed ruling was an abuse of discretion. We therefore vacate the district court's order denying the request for an evidentiary hearing and remand for a hearing whose scope and conduct shall be determined by the district court in conformity with this opinion.

So ordered. Costs to appellants.


**-Dissenting Opinion Follows-**

**BARRON, Circuit Judge, dissenting**. The majority suggests that the District Court erred in assessing the timeliness of the Rule 60(b) motion and in failing to give sufficient credence to the allegations contained in the supporting affidavits. But any error in the District Court's treatment of the timeliness of the motion cannot warrant reversal because the District Court did not rest the denial solely on that basis. We thus may reverse only if the District Court erred in how it responded to the substance of the allegation contained in the affidavits that the jury was exposed to a settlement offer. I do not see, however, how the District Court erred in that regard.

As the majority notes, a district court is required to assume "the truth of fact-specific statements contained in" a Rule 60(b) motion. See Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 18 (1st Cir. 1992). The District Court was thus obliged to take as true that a report of juror misconduct reached the petitioner Bouret -- not that the juror made the report, or even that the juror's employer passed the report to the expert witness Irizarry. But that being all that must -- or even legally can -- be taken as true, I do not see what the District Court did wrong. The majority itself describes the jury's purported exposure to the settlement offer as a "rumor" resting on "layers of hearsay." Maj. Op. 20.

-27-

The judge's implicit characterization of the allegation as a "mere rumor[]" was thus entirely accurate.

Of course, there remains the issue whether the District Court exercised its discretion unreasonably when it refused to investigate the rumor further. The majority suggests that the reports of the rumor set forth in the affidavits were sufficiently "troubling" that the District Court should have undertaken further investigation given the difficulty the petitioner would have had in substantiating the rumor. But the core allegation -- namely, that jurors became aware of settlement discussions and used this awareness to reject Bouret's claims against the defendants -- was an "unsubstantiated conclusion[]" resting on indirect sources. Superline, 953 F.2d at 18. And I do not believe a different view about how discretion should be exercised in the face of a petition based on such an unsubstantiated rumor -- made well after a final verdict -- supplies a sufficient reason to conclude that discretion

was abused or exercised unreasonably.[10]  As a result, I respectfully dissent.

---

[10] There is no precedent beyond <u>Superline</u> that elaborates on the showing that a party must make to require a district court to hold an evidentiary hearing in circumstances akin to those presented here.  But analogous precedent from the criminal context -- which the majority also takes to be relevant -- seems to me to support the conclusion that the District Court had considerable discretion to make the call it made.  <u>See</u> <u>United States</u> v. <u>Connolly</u>, 341 F.3d 16, 34 (1st Cir. 2003) ("A court should only conduct such an inquiry when 'reasonable grounds for investigation exist,' i.e., 'there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant.'" (quoting <u>United States</u> v. <u>Sun Myung Moon</u>, 718 F.2d 1210, 1234 (2d Cir. 1983))); <u>see also, e.g.</u>, <u>United States</u> v. <u>Villar</u>, 586 F.3d 76, 88 (1st Cir. 2009) ("[T]he district judge is in the best position to make the initial judgment. If in this case he thinks further inquiry appropriate, he is free to proceed . . . ."); <u>United States</u> v. <u>Mikutowicz</u>, 365 F.3d 65, 75 (1st Cir. 2004) (the District Court "acted within its considerable discretion by declining to investigate" when confronted with a speculative claim of misconduct during trial); <u>Mahoney</u> v. <u>Vondergritt</u>, 938 F.2d 1490, 1493 (1st Cir. 1991) (finding that a full hearing "would have been premature" where "the judge was faced only with impressionistic concerns about improprieties"); <u>id.</u> at 1492 ("Whether or not the vague allegations in the juror's letter were enough to require any response by the trial court, it is evident that her unfocused, unsworn assertions demanded no more than the preliminary inquiry that the judge agreed to conduct." (footnote omitted)); <u>Neron</u> v. <u>Tierney</u>, 841 F.2d 1197, 1205 (1st Cir. 1988) ("The caselaw, as we read it, fully supports the conclusion that a convicted defendant cannot lay claim to a constitutional right to cross-question jurors in the absence of an adequate evidentiary predicate.").