# United States Court of Appeals
## For the First Circuit

No. 15-2144

UNITED STATES OF AMERICA,

Appellee,

v.

MARK J. ZIMNY,

Defendant, Appellant.

Before,
Torruella, Thompson, and Kayatta,
Circuit Judges.

**ORDER OF COURT**

Entered: May 16, 2017

**THOMPSON, Circuit Judge.** After this court remanded this case to the district court to conduct an inquiry into the colorable claim of juror misconduct raised by the defendant, Mark J. Zimny, United States v. Zimny, 846 F.3d 458, 470-72 (1st Cir. 2017),[1] Zimny filed a motion in the district court for release from custody pending appeal under 18 U.S.C. § 3143(b)(1). The district court denied the motion without prejudice, reasoning that, "[u]ntil the court conducts further interviews of the other jurors, . . . there is insufficient basis at this time to determine whether the investigation will likely result in a reversal or an order for a new trial."[2] Zimny then filed with this court a motion under Rule 9(b) of the Federal Rules of Appellate Procedure for release from custody pending appeal. The government opposes the motion.

---

[1] This order assumes familiarity with the above-cited opinion.

[2] At the time that the district court denied Zimny's motion for release, the court was scheduled to conduct the juror interviews on May 23 and 24, 2017. Those dates subsequently were canceled, and, as of the date of this order, new dates for the juror interviews have not yet been selected.

On our "independent review" of the district court's denial of the motion, see United States v. Bayko, 774 F.2d 516, 520 (1st Cir. 1985),[3] we grant the motion and remand to the district court for determination of the appropriate release conditions. And, because of the dearth of authority addressing motions for release from custody pending appeal in circumstances like those presented by this case, we briefly explain our reasons for granting the motion.

Zimny seeks release from custody pending appeal under § 3143(b)(1). That statute provides that, as a general rule, a person convicted of an offense and sentenced to a term of imprisonment shall be detained pending appeal,

> unless the judicial officer finds —
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in —
>
> (i) reversal,
>
> (ii) an order for a new trial,
>
> (iii) a sentence that does not include a term of imprisonment, or
>
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). "If the judicial officer makes such findings, such judicial officer shall order the release of the person . . . ." Id.[4] We conclude that Zimny has met these requirements and is therefore entitled to release pending appeal.

Zimny convincingly argues that he is not a flight risk or danger to the community. Indeed, the government does not contend otherwise. He remained out on bail during trial, and the district court allowed him to self-report to prison following his conviction and the imposition of sentence. Cf. United States v. Weiner, No. 92-1708, 1992 WL 180697, at *1 (1st Cir. July 31, 1992) (unpublished decision) (explaining, in a case where the district court found that the

---

[3] That independent review is, of course, "tempered by deference to the district court's firsthand judgment of the situation." Id. But our standard of review is more rigorous than abuse-of-discretion review. See id. at 519-20.

[4] These same standards govern our consideration of Zimny's motion under Rule 9(b). See Fed. R. App. P. 9(c) ("The court must make its decision regarding release in accordance with the applicable provisions of 18 U.S.C. §§ 3142, 3143, and 3145(c).").

defendant posed no risk of flight but made no explicit finding as to dangerousness, that "[w]hile no explicit finding was made as to dangerousness, the fact that defendant was released pending sentence necessarily entailed a finding that he was not likely to pose a danger"). And nothing that has happened in the time that Zimny has been imprisoned changes this calculus. In fact, Zimny has submitted documentation to this court indicating that his security level in prison is "MINIMUM" and his custody level is "OUT," the second lowest custody level assigned to an inmate. Therefore, Zimny has met his § 3143(b)(1)(A) burden.

We therefore proceed to the requirements imposed by § 3143(b)(1)(B). There is no dispute that "the appeal is not for the purpose of delay." 18 U.S.C. § 3143(b)(1)(B). With respect to the remainder of that subparagraph, we explained in Bayko that

> the provision breaks down into two distinct requirements:
>
> (1) that the appeal raise a substantial question of law or fact [the substantiality prong] and
>
> (2) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed [the likelihood prong].

774 F.2d at 522. We are of the opinion that Zimny has met both of these prongs.

**1.** Zimny has identified a substantial question of fact: whether the alleged juror misconduct occurred.[5] In Bayko, we decided that a substantial question means "a 'close' question or one that very well could be decided the other way." 774 F.2d at 523 (quoting United States v. Giancola, 754 F.2d 898, 901 (11th Cir. 1985)).

Zimny promptly alerted the district court to his colorable allegation of serious juror misconduct. There was nothing else Zimny could have done to develop the record on this factual question without the district court's assistance. Cf. United States v. Kepreos, 759 F.2d 961, 967 (1st Cir. 1985) ("[H]enceforth this Circuit prohibits the post-verdict interview of jurors by counsel, litigants or their agents except under the supervision of the district court, and then only in such extraordinary situations as are deemed appropriate."); see also Bouret-Echevarría v. Caribbean Aviation Maint. Corp., 784 F.3d 37, 48 n.8 (1st Cir. 2015) ("[P]ost-verdict contact with jurors is prohibited in the First Circuit generally."). Because he came forward with a colorable claim of juror misconduct, an investigation was required. In these circumstances, Zimny has met his burden on the substantiality prong of § 3143(b)(1)(B): He has shown that this question of fact is close enough to warrant some investigation, and this close question cannot be resolved until this investigation takes place. At this juncture, therefore, this question of fact "very well could be decided [either] way." Bayko, 774 F.2d at 523 (quoting Giancola, 754 F.3d at 901).

---

[5] In his motion, Zimny characterizes the question as one of law. This seems mistaken; the critical question in this case is whether the alleged juror misconduct occurred, and this is a question of fact.

We cannot accept the government's position that it's too early to tell whether the question is substantial because no investigation has yet taken place. For starters, the government has not identified any authority to support the position that a motion under § 3143 can be denied because the substantiality of the question is not yet ripe. Cf. 18 U.S.C. § 3145(c) (providing that "[a]n appeal from a release or detention order . . . shall be determined promptly"). Moreover, even if a motion under § 3143(b) could be denied as premature as a general matter, that route seems like a poor fit for a case like this one, where the defendant has done everything he can to investigate the factual question, and the only reason that the factual question still persists is because the required investigation has yet to take place.

Moreover, the government's reliance on portions of the panel's opinion that noted the undeveloped record is misplaced. Those passages were concerned with a very different question: whether to remand for a new trial at this time. The fact that it might be premature to take the drastic step of reversing Zimny's conviction and ordering a new trial before the required investigation takes place does not support the government's position that it is also premature to decide whether Zimny has identified a substantial question of fact. After all, substantiality under § 3143(b) requires only a showing that the question is a close one. At the very least, the question is close enough to require an investigation. Zimny has done all he can do under our case law to develop the record on this question without the court's assistance, and now all that remains is for that investigation to take place.

**2.** Zimny has also met his burden on the likelihood prong of § 3143(b)(1)(B). As Bayko demonstrates, analysis of the likelihood prong proceeds on the assumption that the substantial question of law or fact "is determined favorably to defendant on appeal." 774 F.2d at 522 (framing the likelihood prong as follows: "that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed" (emphasis added)). Therefore, the question that the likelihood prong poses in this case is not, as the district court stated, "whether the investigation will likely result in a reversal or an order for a new trial." (Emphasis added.) Instead, we must ask whether a reversal or new trial is likely if the substantial question of fact Zimny has raised — whether the alleged juror misconduct occurred — "is determined favorably to [Zimny]." Id.

Properly understood, the likelihood prong must be resolved in Zimny's favor. If we assume, as we must under Bayko, that Juror No. 8 was "spouting about" the highly prejudicial blog post and its comments to other jurors "since day one" of trial so much so that the other jurors "told her to stfu" and "got annoyed," Zimny, 846 F.3d at 464, it is likely — although not inevitable — that this juror misconduct was prejudicial and not harmless, see Bayko, 774 F.2d at 523 (explaining that "the language in the statute which reads 'likely to result in reversal or an order for a new trial' is a requirement that the claimed error not be harmless or unprejudicial"), under our juror-misconduct case law.[6]

---

[6] See, e.g., Marshall v. United States, 360 U.S. 310, 311-13 (1959) (per curiam) (reversing defendant's conviction and remanding for new trial where jurors were exposed to newspaper articles discussing defendant's prior convictions and district court had excluded evidence of defendant's prior convictions); United States v. Bristol-Mártir, 570 F.3d 29, 36-37, 45 (1st Cir.

- 4 -

For these reasons, we conclude that Zimny has met his burden to show entitlement to release from custody pending appeal under § 3143(b)(1).  Accordingly, we grant the motion and remand to the district court for determination of the appropriate conditions of release.

**It is so ordered.**


By the Court:
<u>/s/ Margaret Carter, Clerk</u>

cc:
Hon. Rya W. Zobel
Robert Farrell, Clerk, United States District Court for the District of Massachusetts
Kevin J. Reddington
John M. Thompson
Mark J. Zimny
Lori J. Holik
Vijay Shanker
Dina Michael Chaitowitz
Victor A. Wild
Giselle J. Joffre
Doreen M. Rachal
Barbara Gruenthal
John P. McLafferty

---

2009) (vacating defendant's conviction and remanding for new trial where juror conducted internet research on meaning of words used in federal statute and, during deliberations, had shared her understanding of these words with other jurors); <u>United States</u> v. <u>Rhodes</u>, 556 F.2d 599, 601-02 (1st Cir. 1977) (reversing defendants' convictions and remanding for new trial where, during trial, local newspaper ran article about "seriously prejudicial matter" and, on the day the story ran, a reporter saw a juror carrying what appeared to be a newspaper under his arm); <u>United States</u> v. <u>Perrotta</u>, 553 F.2d 247, 249-51 (1st Cir. 1977) (reversing defendant's conviction and remanding for new trial where, during trial, local evening newspaper ran story about district court's exclusion of "extremely prejudicial" evidence and district court refused to poll jurors on whether they saw article; court concluded that error was not harmless).