# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 15, 2017                    Decided June 16, 2017

No. 15–7107

MARCOS MONTES,
APPELLEE/CROSS-APPELLANT

v.

JANITORIAL PARTNERS, INC. AND RAY PARK,
APPELLANTS/CROSS-APPELLEES

GEOFF OGDEN, ET AL.,
CROSS-APPELLEES

———

Consolidated with 16–7063

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:13–cv–00410)

———

*Denise M. Clark* argued the cause and filed the briefs for the appellee/cross-appellant.

*John A. DiNucci* argued the cause and filed the briefs for the appellants/cross-appellees.

Before: GARLAND, *Chief Judge*, and HENDERSON and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Manuel Montes sued his employer for wage underpayment. When his employer failed to respond, Montes obtained a default judgment for himself and two fellow employees. But there was a problem: the statute he sued under required the fellow employees to formally "opt in" to the lawsuit. They had not done so. Reacting to their failure, the district court vacated its default judgment as to Montes's two fellow employees, concluding it had lacked subject matter jurisdiction to enter it. That was error. The opt-in omission did not oust the court of subject matter jurisdiction of their claims. Nevertheless, the judgment may be void for a different reason: two defendants claim they were never served with the complaint. To decide the service issue, the district court must hold an evidentiary hearing on remand.

## I.  BACKGROUND

Janitorial Partners, Inc. (JPI) is a Virginia corporation that provides janitorial services throughout the District of Columbia (D.C.) metropolitan area. For several years, it employed Montes as a janitor. In March 2013, Montes sued JPI and four of its officers, including President Ray Park. He asserted claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.* and two D.C. statutes,[1] alleging the defendants failed to pay, *inter alia*, minimum wage or overtime.

Montes styled his lawsuit as an FLSA collective action. In a collective action, the named plaintiff sues on behalf of

---

[1] The statutes are the D.C. Minimum Wage Revision Act, D.C. CODE §§ 32-1001 *et seq.* (2013), and the D.C. Wage Payment and Collection Law, D.C. CODE §§ 32-1301 *et seq.* (2013).

himself and other similarly-situated employees. 29 U.S.C. § 216(b). Section 16(b) of the FLSA provides that "[n]o employee shall be a party plaintiff to [a collective] action unless he gives his consent in writing . . . and such consent is filed in the court in which such action is brought." *Id.* Montes alleged that "there [were] 2 similarly-situated persons" whose "harms suffered . . . were the same as or substantially similar" to his. Compl. ¶¶ 57, 59, Joint Appendix 19. He also alleged that collective-action "[c]onsents . . . have [been] and continue to be executed." *Id.* ¶ 10, Joint Appendix 11. But he did not file the consents with his complaint.

Summonses issued for each defendant. According to process server Dervin Romero's two affidavits, service was effectuated on Park both individually and as JPI's registered agent on June 6, 2013, at JPI headquarters.[2] This meant JPI and Park had until June 27 to answer but neither did. The clerk of court therefore declared them in default on July 2. Montes's counsel subsequently moved for entry of default judgment on behalf of "Plaintiffs Marcos Montes, Victor Palma, and Sandra Zelaya." Joint Appendix 52. Although a supporting memorandum asserted that Palma and Zelaya "consented to th[e] action," Joint Appendix 54 n.2, their consent forms remained unfiled. The district court nonetheless entered a default judgment for Montes, Palma and Zelaya. It also awarded costs and attorney's fees.

The three soon began efforts to collect on their judgment. But because the judgment caption listed only Montes's name, they could not register it in the Virginia courts. Accordingly, they requested the district court to "issue a new Order and Judgment with the full caption." Joint Appendix 89. The

---

[2] The district court docket contains no evidence that Romero served the other three named defendants and no judgment was entered against them.

district court obliged. Several months later, they sought and obtained an entry of judgment and writ of execution against PNC Bank, N.A., JPI's and Park's garnishee. The bank then paid Montes, Palma and Zelaya the full amount of the default judgment.

JPI and Park moved to vacate the default judgment under Federal Rule of Civil Procedure 60(b). They argued, *inter alia*, that the judgment was void because Palma and Zelaya had not opted in. JPI and Park also claimed they had never been served and therefore the district court lacked personal jurisdiction of them. In support, they submitted several declarations. Park's declaration asserted that he generally worked from home, not at JPI headquarters where Romero allegedly served him. Park also noted that Romero's affidavit described him as thirty-five years old when in fact he was over fifty. According to the declaration of JPI general manager, Donald Garrett, Romero went to JPI headquarters but did not serve Park while there. In another declaration, Jeffrey Lawson, a former JPI business advisor, stated he e-mailed Park on June 6, 2013 shortly after 3:00 pm. Had Park come in that day, Lawson said, the two would not have corresponded by e-mail. In light of this evidence, JPI and Park requested the district court to conduct a hearing before crediting Romero's affidavit.

In September 2015, the district court rejected JPI's and Park's defense without a hearing. It emphasized that Romero's "affidavits unequivocally state[d] that . . . Park . . . was served . . . at 2:24PM on June 6, 2013." *Montes v. Janitorial Partners, Inc.*, 128 F. Supp. 3d 188, 192 (D.D.C. 2015). The court did not find Park's, Garrett's or Lawson's declarations sufficiently credible. Nevertheless, it set aside its judgment for Palma and Zelaya. Reasoning that the FLSA's opt-in requirement was "more than just a procedural

technicality," *id.* at 193, the court concluded it lacked subject matter jurisdiction because Palma and Zelaya were not party plaintiffs and vacated the judgment in their favor. It then referred the case to a magistrate judge for a report and recommendation regarding Montes's attorney's fees award in light of the partial vacatur.

## II. ANALYSIS

Each party challenges one of the district court's rulings. Montes principally attacks the substance of the district court's vacatur decision, arguing that "the District Court's judgment in Ms. Zelaya and Mr. Palma's favor, while perhaps granted in error, was not void." Cross-Appellant Br. 13. JPI and Park challenge the district court's failure to hold an evidentiary hearing before ruling on whether service had been effectuated.[3]

### A. DISTRICT COURT'S PARTIAL VACATUR

We begin with Montes's argument. Before reviewing its merits, we address our own jurisdiction. JPI and Park argue that we lack jurisdiction of Montes's appeal because it is moot. The United States Constitution limits our jurisdiction to "Cases" and "Controversies." U.S. CONST. art III., § 2, cl. 1. "A case becomes moot—and therefore no longer a 'Case' or

---

[3] JPI and Park also argue that the default judgment was void as to Palma and Zelaya because they had no notice of their claims. But the complaint itself gave them notice, as it brought a collective action under the FLSA, asserted that two persons similarly situated to Montes qualified as Collective Action Members and requested "unpaid minimum wages and overtime against Defendants in favor of Plaintiff and *all Collective Action Members*." Joint Appendix 24 (emphasis added). Assuming for this argument that JPI and Park were in fact properly served, they were therefore on notice that any default judgment could reach employees other than Montes.

'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. ___, 133 S. Ct. 721, 726 (2013) (some internal quotation marks omitted). If an intervening circumstance deprives the plaintiff of a personal stake in the lawsuit's outcome, the action must be dismissed as moot. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. ___, 133 S. Ct. 1523, 1528 (2013). Because Montes retains a personal stake in the controversy regarding whether the judgment in favor of Palma and Zelaya should be reinstated, however, the action is not moot. The district court directed a magistrate judge to recalculate Montes's attorney's fees award in light of its having vacated Palma's and Zelaya's judgment. Presumably, the district court concluded that the attorney's fees award could require reduction given Palma's and Zelaya's non-plaintiff status. *Cf.* 29 U.S.C. § 216(b) (In FLSA collective action, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff . . . , allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). If so, Montes might not have been able to recover as great a share of the litigation costs. He also had an interest in ensuring the attorney's fees award was not reduced. *Cf. Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006) ("So long as [a class-action] plaintiff retains a personal stake in shifting to successful class litigants a portion of those fees and expenses incurred as the purported class representative, the plaintiff has a sufficient interest to appeal the denial of class certification." (brackets and internal quotation marks omitted)).

We proceed to the merits of his argument. Conducting *de novo* review, *United States v. Philip Morris USA Inc.*, 840 F.3d 844, 849 (D.C. Cir. 2016) ("[w]e review a district court's Rule 60(b)(4) decision de novo."), we believe the district court erred in vacating the judgment for Palma and Zelaya. Rule 60(b)(4)

permits a district court "[o]n motion and just terms" to "relieve a party . . . from a final judgment, order, or proceeding" if "the judgment is void[.]" FED. R. CIV. P. 60(b). But "[a] judgment is not void . . . simply because it . . . may have been erroneous." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (internal quotation marks omitted). On the contrary, it is void only in limited circumstances—for example, if entered by a court without subject matter jurisdiction. *See Philip Morris*, 840 F.3d at 850. This principle has an important corollary: Not every "claim of procedural deficiency" implicates subject matter jurisdiction. *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1179 (D.C. Cir. 2013). We therefore must decide whether section 16(b)'s opt-in requirement is of jurisdictional significance.[4]

The distinction between jurisdictional and nonjurisdictional requirements is important. Jurisdictional requirements "govern a court's adjudicatory authority[.]" *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (internal quotation marks omitted). By contrast, a nonjurisdictional requirement, "even if important and mandatory," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011), does not. The United States Supreme Court has prescribed a "readily administrable bright line" to distinguish the two. *Arbaugh v.*

---

[4] JPI and Park argue Montes has forfeited any argument that section 16(b) is procedural by not raising it in district court. We disagree. In district court, Montes argued that Palma's and Zelaya's judgment was within the Court's subject matter jurisdiction. He also contended their failure to file consent forms did not change that. The district court disagreed. *Montes v. Janitorial Partners, Inc.*, 128 F. Supp. 3d 188, 193 (D.D.C. 2015). Montes's current argument is thus an effort to "refine and clarify [his] analysis in light of the district court's ruling." *Teva Pharm., USA, Inc. v. Leavitt*, 548 F.3d 103, 105 (D.C. Cir. 2008).

*Y&H Corp.*, 546 U.S. 500, 516 (2006). If the Congress "clearly states that a threshold limitation on a statute's scope shall count as jurisdictional," that is the end of the matter. *Id.* at 515–16. But if the Congress "does not rank a statutory limitation on coverage as jurisdictional," a court must not treat it as such. *Id.* at 516. We examine the provision's "text, context, and relevant historical treatment," *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010), and ask whether "traditional tools of statutory construction . . . plainly show that Congress imbued a procedural bar with jurisdictional consequences[,]" *United States v. Kwai Fun Wong*, 575 U.S. ___, 135 S. Ct. 1625, 1632 (2015).

Applying these principles, we readily conclude section 16(b)'s opt-in requirement is nonjurisdictional. Section 16(b) is a broad provision. *See* 29 U.S.C. § 216(b). It creates a right of action against employers for wage and hours violations. It provides for the recovery of costs and attorney's fees. And it sets out the circumstances in which certain action by the Secretary of Labor affects an employee's right to sue. But it does not purport to limit the *court*'s power. *Gonzalez*, 565 U.S. at 141. In fact, its sole reference to jurisdiction is the clause permitting a plaintiff to sue "in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b). This language confirms our conclusion in that it assumes a grant of jurisdiction elsewhere. And, here, there is such a grant. 28 U.S.C. § 1331 assigns the federal district court original jurisdiction over all civil actions "arising under the . . . laws . . . of the United States." Montes's action arose under the FLSA, plainly a law of the United States. And "nothing in § [1331] conditions its jurisdictional grant on compliance with § [16(b)'s opt-in requirement]." *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709, 717 (2016) (internal quotation marks omitted). The district court therefore had subject matter jurisdiction. Palma's and Zelaya's failure to comply

with section 16(b) means instead that they failed to establish their cause of action. *See Trudeau v. FTC*, 456 F.3d 178, 183–85 (D.C. Cir. 2006).

## B. DISTRICT COURT'S FAILURE TO HOLD EVIDENTIARY HEARING

Although a district court "[t]ypically . . . enjoys broad discretion in managing its docket[,]" *Grimes v. District of Columbia*, 794 F.3d 83, 90 (D.C. Cir. 2015), that discretion is not limitless. And in some circumstances, failure to hold an evidentiary hearing constitutes an abuse of discretion. *E.g.*, *Cobell v. Norton*, 391 F.3d 251, 261–62 (D.C. Cir. 2004). As we long ago explained, a district court "cannot rest its decision simply on the paper record" if a factual dispute's resolution turns on the parties' credibility. *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984). It must instead hold a hearing to assess credibility. *Id.*

That principle controls here. The record before the district court contained contradictory evidence regarding service of process. Romero swears he served Park. Park, Garrett and Lawson insist otherwise. Had one of the written submissions "demonstrate[d] the falsity of [another] with reasonable certainty," perhaps the district court could have avoided assessing credibility. *Id.* But there was reason to question whether Romero served Park. Park emphasized that he was a decade and a half older than Romero believed. And Lawson's e-mail to Park may suggest Park was not at JPI headquarters on June 6. Relying as it did on the declarations only, the district court's "opportunity to judge credibility was nonexistent." *Autera v. Robinson*, 419 F.2d 1197, 1202 (D.C. Cir. 1969). It therefore lacked a sufficient basis to credit one declaration over another. *See Durukan Am., LLC v. Rain Trading, Inc.*, 787 F.3d 1161, 1164 (7th Cir. 2015) ("Only a

live hearing can resolve [a] factual dispute" regarding service in deciding Rule 60(b)(4) motion.). Under these circumstances, the district court abused its discretion in failing to conduct an evidentiary hearing.

For the foregoing reasons, we reverse the district court's vacatur of the default judgment for Palma and Zelaya. On remand, the district court must hold an evidentiary hearing to determine whether its original judgment was void for lack of personal jurisdiction based on defective service of process.

*So ordered.*