# United States Court of Appeals for the Federal Circuit

---

**STEPHANIE DIMASI,**
*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

---

2022-1854

---

Appeal from the United States Court of Federal Claims in No. 1:15-vv-01455-AOB, Judge Armando O. Bonilla.

---

Before MOORE, *Chief Judge*, PROST and TARANTO, *Circuit Judges*.

PER CURIAM.

## O R D E R

### I

Stephanie DiMasi, at the time 47 years old and enrolled as a nurse-practitioner student, received an influenza vaccine on December 4, 2012. Appx. 15. She was admitted to the hospital on December 5, 2012, released the next day, and then readmitted on December 8, 2012. Appx. 83–90, 96–99. Just under three years later, Ms. DiMasi, through her counsel, filed a petition in the United States Court of Federal Claims (Claims Court) seeking

compensation under 42 U.S.C. §§ 300aa-10 to -34 (the Vaccine Act), alleging injuries from the vaccine.  Appx. 16, 21, 25.  Ms. DiMasi's counsel sought a decision on the papers, without submission of oral testimony.  On November 7, 2019, the special master assigned to the matter denied compensation.  Appx. 21–29.

The special master noted that the parties agreed on the character and existence of the post-vaccination conditions at issue, as ultimately diagnosed in 2016 and 2017: "small fiber neuropathy" and "postural tachycardia syndrome" (POTS), which are related.  Appx. 27; *see also* Appx. 42, 65. He also noted that no claim of significant aggravation of a preexisting condition, *see* 42 U.S.C. § 300aa-11(c)(1)(C), had been presented.  Appx. 21.  After analyzing the evidence, including expert reports on both sides, the special master found that the vaccine was not the cause in fact of the conditions at issue, because her "conditions pre-dated the influenza vaccination."  Appx. 21; *see also* Appx. 27–29.

Ms. DiMasi had thirty days to seek Claims Court review of the special master's ruling.  42 U.S.C. § 300aa-12(e)(1).  No such review was sought, and the Claims Court entered final judgment against the claim for compensation on December 11, 2019.  Appx. 30.

On September 15, 2020, within a year of the final judgment, Ms. DiMasi sent the special master a letter, with medical records and other attachments, requesting that she be allowed to proceed pro se (because of alleged significant problems with her counsel's actions) and that her case be reopened.  Appx. 31–151.  Her counsel promptly submitted a responsive affidavit.  Appx. 153–56.  The special master allowed Ms. DiMasi to proceed pro se and construed her request to reopen her case as a motion for relief from judgment under Claims Court Rule 60.  Appx. 162, 181–82, 190–91. Ms. DiMasi responded to counsel's affidavit, Claims Ct. Dkt. No. 103, and the Secretary opposed the motion, Claims Ct. Dkt. No. 106.  On June 3, 2021, the

special master denied Ms. DiMasi's motion, Appx. 157, but then, on her request for reconsideration, Appx. 172–76; Claims Ct. Dkt. No. 113, he vacated the denial, Claims Ct. Dkt. No. 115 (vacatur). Thereafter, the government made a supplemental filing, Claims Ct. Dkt. No. 120, and Ms. DiMasi sought leave to file additional material, Appx. 16 n.2, 182.; Claims Ct. Dkt. No. 118.

We view Ms. DiMasi's initial September 2020 filing, her response to counsel, and her request for reconsideration as collectively constituting her Rule 60 motion for relief from the December 2019 judgment. Ms. DiMasi made several contentions. Perhaps most centrally, she asserted a fundamental misunderstanding about facts regarding the precise timing of the emergence of key (neuropathy) symptoms, a misunderstanding that, she alleged, is reflected in expert submissions and infected both the special master's denial of compensation and her own counsel's submissions, including his choice not to present a significant-aggravation claim. *See, e.g.*, Appx. 31–32 (Sept. 2020 letter); Ex. 13 at 17–18 (expert reports); Ex. 7 at 1 (expert reports); Appx. 24, 21 (denial of compensation); Appx. 153 (counsel affidavit). She also alleged misunderstandings of certain pre-vaccination records. *See, e.g.*, Appx. 31; Ex. 19 at 3, 17 (quoted at Appx. 193–94); Ex. 7 at 1 (quoted at Appx. 194). Ms. DiMasi tied the misunderstandings and her counsel's submissions and choices to allegations that counsel failed to fulfill duties to communicate with her and (unless counsel withdrew) to respect her right to make certain key choices as the client in the attorney-client relationship, including some choices about what claims to raise. *See, e.g.*, Appx. 32, 153. In addition, she asserted deficiencies by counsel in not seeking review by the Claims Court of the compensation denial, not definitively telling her he would not do so, and not informing her of the filing deadline. *See, e.g.*, Appx. 32, 153.

On November 10, 2021, the special master denied Ms. DiMasi's Rule 60 motion and motion for leave to file

additional material. Appx. 178. He first addressed the additional-material motion, which he denied after elaborating legal standards for various provisions of Rule 60. Appx. 183–90, 204–09. As to the Rule 60 motion itself, the special master, relying on legal formulations set forth in the discussion of the additional-material motion, denied relief from the December 2019 judgment. Appx. 190–99. Among other conclusions, the special master rejected Ms. DiMasi's allegation of misunderstanding of evidence about when precisely neuropathy symptoms manifested themselves after the vaccination (immediately or, instead, after a few days) and the related challenge to counsel's decision to request a ruling on the record without oral testimony from Ms. DiMasi and his decision not to raise a significant-aggravation claim. Appx. 191–97. Regarding counsel's not having sought further review of the November 2019 special master's ruling, which the special master said presented "a close call," the special master recognized the deficiencies in counsel's communication with Ms. DiMasi but ultimately found that Ms. DiMasi failed to act diligently to preserve her rights. Appx. 199.

The Claims Court subsequently denied Ms. DiMasi's motion for review of the special master's November 2021 decision, finding no reversible error. Appx. 15–20. Ms. DiMasi timely appealed, still acting pro se. We have jurisdiction under 28 U.S.C. § 1295(a)(3). Under the Vaccine Act, we review a decision of the special master "under the same standard as the [Claims Court]." *Rodriguez v. Secretary of Health & Human Services*, 632 F.3d 1381, 1383–84 (Fed. Cir. 2011). We must set aside the decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Avera v. Secretary of Health & Human*

*Services*, 515 F.3d 1343, 1347 (Fed. Cir. 2008) (quoting 42 U.S.C. § 300aa-12(e)(2)(B)).

## II

Ms. DiMasi's pro se filings raise issues whose resolution would significantly benefit from additional briefing (and oral argument), including from an attorney appointed by this court as an amicus to support her appeal. We here selectively identify certain issues raised in this appeal. The new briefing should address those issues. We do not confine the new briefing to those issues, to the exclusion of other issues that are pertinent to the resolution of the appeal.

The Claims Court's Rule 60(b) identifies various "grounds for relief from a final judgment, order, or proceeding." Claims Court Rule 60(b) (capitalization removed). We look to cases interpreting Rule 60(b) of the Federal Rules of Civil Procedure, which governs in district courts, in interpreting the identical Claims Court's Rule 60(b). *See Progressive Industries, Inc. v. United States*, 888 F.3d 1248, 1253 n.4 (Fed. Cir. 2018); *Information Systems & Networks Corp. v. United States*, 994 F.2d 792, 794 n.3 (Fed. Cir. 1993). We review a decision to grant or deny relief under Rule 60(b) for an abuse of discretion, including an error of law or clearly erroneous finding of fact. *Patton v. Secretary of Department of Health & Human Services*, 25 F.3d 1021, 1029 (Fed. Cir. 1994). In some circumstances, a trial court considering a Rule 60(b) motion must resolve factual disputes, and sometimes a hearing is required in order to do so. *See, e.g., Sheng v. Starkey Laboratories, Inc.*, 53 F.3d 192 (8th Cir. 1995); *Michaud v. Michaud*, 932 F.2d 77 (1st Cir. 1991); *Garabedian v. Allstates Engineering Co.*, 811 F.2d 802 (3d Cir. 1987); *Montes v. Janitorial Partners, Inc.*, 859 F.3d 1079, 1084–85 (D.C. Cir. 2017); *Durukan America, LLC v. Rain Trading, Inc.*, 787 F.3d 1161, 1164 (7th Cir. 2015); *Bouret-Echeverria v. Caribbean Aviation Maintenance Corp.*, 784 F.3d 37, 46–49 (1st Cir. 2015); 11

Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2865 (3d ed. updated Apr. 2022).

In this case, the question arises whether the special master must a hold a hearing, or otherwise have further factfinding proceedings, to resolve factual disputes pertinent to Ms. DiMasi's Rule 60(b) motion. In the present Order, we focus specifically on what is needed to apply Rule 60(b)(1) in this case. Ms. DiMasi filed for relief within the one year allowed for 60(b)(1) motions. *See* Claims Court Rule 60(c)(1); Fed. R. Civ. P. 60(c)(1). It is not apparent that any of the 60(b)(2)–(5) bases applies to this case. And the catch-all 60(b)(6)—which is not subject to the one-year filing rule, *see* Claims Court Rule 60(c)(1); Fed. R. Civ. P. 60(c)(1)—"is available only when Rules 60(b)(1) through (b)(5) are inapplicable," *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022). Rule 60(b)(1) is therefore an appropriate first subject of analysis.[1]

A

Rule 60(b)(1) authorizes relief from a judgment for, among other things, "mistake." A "mistake," the Supreme Court has recently ruled, is a "factual misconception or misunderstanding" or an "error of law or fact," whether by

---

[1] Without being exhaustive, we note two of the topics not otherwise discussed in this Order. First, we do not discuss the challenge to counsel's not seeking Claims Court review of the special master's November 2019 ruling. It is not apparent what prospect Ms. DiMasi would have had in any such review on the record, including arguments, then before the special master. The issue we discuss involves, in contrast, an argument that the record itself was defective, with asserted deficiencies of counsel responsible. Second, we also do not discuss here the denial of leave to file additional material in support of the Rule 60(b) motion.

a party or by the court. *Kemp*, 142 S. Ct. at 1862 (cleaned up). It is implicit in the definition that invocation of this provision is not available for a mere later-regretted choice not infected by such an incorrect understanding. *Cf. In re Dinsmore*, 757 F.3d 1343, 1347–48 (Fed. Cir. 2014) (discussing "error" required for reissue of a patent). The asserted mistake we discuss in this Order is about medical facts—a mistake, it is asserted, that affected the adjudication and that entered the record essentially uncontested, and infected counsel's choices about what claims to press, because of counsel's failures to fulfill duties inherent in the attorney-client relationship.

In this combination of factual mistake and attorney failure, the factual mistake we discuss here concerns the appearance of neuropathy symptoms after the vaccination. Ms. DiMasi asserts that the medical records written by two physicians (Drs. Chen and Fischer) who saw her a few weeks after her vaccination and listened to her account of the symptoms she had a few weeks earlier, contain inaccurate descriptions of the timing (perhaps also of the body location) of her neuropathy symptoms in the first several days after the vaccination—whether the inaccuracy resulted from her own error or imprecision in articulation in a doctor-patient interview or from the physicians' misunderstanding of what she said. The timing issue is whether the neuropathy symptoms (unlike other symptoms) manifested themselves within hours of the vaccination, as those records report her saying, or, instead, not until several days later, as she alleges. *Compare* Appx. 24; Ex. 13 at 17, 18; Ex. 7 at 1, *with* DiMasi Opening Br. at 12; Appx. 37; Appx. 220. As support for her allegation, Ms. DiMasi points to evidence of medical and other records more contemporaneous with the days in question—from December 4, 2012, the day of vaccination, to a few days later—as not showing the neuropathy symptoms until several days after the vaccination. *See* Appx. 23, 37, 59, 173, 224; Appx. 83–

90; Appx. 224 (referring to Claims Ct. Dkt. No. 31-2); Ex. 6 at 48; Ex. 13 at 17.[2]

As to the attorney-failure component of the central allegation, Ms. DiMasi has alleged "that she advised" her counsel "on several occasions that the neurological symptoms did not begin until three to four days after the vaccination." Appx. 193; Appx. 154–55 ¶¶ 16–17 (counsel stating that she supplied him a marked-up copy of the Dr. Chen record indicating where she thought it was inaccurate).[3] Nevertheless, she has alleged, her counsel did not

---

[2] The records include one or more reports submitted to the Vaccine Adverse Event Reporting System (VAERS) maintained by Centers for Disease Control and Prevention (CDC) and Food and Drug Administration, both of which are components of the Department of Health and Human Services. In this court, Ms. DiMasi moved to supplement the appendix just after receiving from the CDC her previously requested official VAERS record. We grant the request. The Secretary does not deny that this is an accurate copy of an official government record being submitted simply to establish, at this point, the fact that the record says what it says. The government has not suggested that the document is inappropriate for judicial notice of that fact. *See* Fed. R. Evid. 201; 16A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3956.1 (5th ed. updated Apr. 2022) (under Fed. R. Evid. 1101, appellate court may take judicial notice of a fact that meets the Fed. R. Evid. 201 standard).

[3] In discussing the grievance about misunderstanding of post-vaccination medical evidence, the Claims Court used the word "doctored" to refer to Ms. DiMasi's markup for counsel of the report from Dr. Chen. Appx. 18–19. We have seen no justification to support any suggestion that she altered the record to hide its original content to fool anyone into believing that the original contained the words

challenge the accuracy of the medical records in what he submitted to the special master or offer her testimony on the point, *see* Appx. 174–76, a decision she alleges was not preceded by an adequate discussion with her, Appx. 175, 211, 216–17, even though the portions of the records at issue seemingly rested on an oral conversation to which she was a party several weeks after the vaccination.

Ms. DiMasi contends that correction of the alleged mistake could in fact undermine the special master's November 2019 denial of Vaccine Act compensation. The dispute over entitlement to compensation, as presented to the special master, concerned the origin of the conditions at issue, with necessary evaluation of the presence of symptoms in two time periods: after vaccination and before vaccination. Ms. DiMasi also challenges counsel's decision not to assert a significant-aggravation claim before the special master, *see* Appx. 32; Appx. 155 ¶ 22, which might be affected by a proper understanding of post-vaccination manifestation of the particular symptoms. We understand Ms. DiMasi to contend that the asserted mistake about the post-vaccination facts contributed to counsel's decision not to claim that, even if a condition preexisted vaccination (as the Secretary asserted), it was significantly aggravated by the vaccine—a claim that, not presenting the starker before-versus-after choice of causation, may be easier to establish and could have been argued in the alternative. And Ms. DiMasi alleges that counsel did not adequately consult with her about the decision not to present a significant-aggravation claim. *See* Appx. 174.

---

she wrote—rather than using a familiar technique to indicate, on her copy (not the only copy, *see* Ex. 13 at 17), precisely where she thought the record was inaccurate, without any pretense that her words were the original. *See* Appx. 193–94 (special master discussing Ms. DiMasi's handwritten "corrections" to medical report).

The special master expressly relied on Ms. DiMasi's consultations with Drs. Chen and Fischer in his evaluation of the post-vaccination facts to assess the plausibility of a connection of the at-issue conditions to the vaccination by way of an immunological reaction.  Appx. 24, 28, 194.  The special master's November 2019 opinion cites and quotes key passages from the records of Drs. Chen and Fischer at issue, including specifically what those records themselves say to the effect that the (allegedly misunderstood) facts about symptoms and their emergence post-vaccination run counter to an inference of causation by the vaccine.  Appx. 24, 28.  Moreover, the Secretary's expert, whose conclusion the special master adopted as persuasive, Appx. 28–29, relied on at least Dr. Chen's statements.  *See* Leist Report at 8; Leist Supp. Report at 1.  The motion for judgment on the record that Ms. DiMasi's own counsel filed on her behalf itself relies on Drs. Chen and Fischer's statements for the timing of her neurological symptoms, Claims Ct. Dkt. No. 87, at 2–3, as does the Secretary's response to that motion, Claims Ct. Dkt. No. 88, at 4, 29–30.  Significantly, the November 2019 opinion does not seem to say that, even if the tingling symptoms of neuropathy manifested themselves when and how Ms. DiMasi asserts, the special master would still find that the neuropathy condition (or related POTS) preexisted the vaccination.  And it does not address a significant-aggravation claim, which was not presented.

## B

For at least the reasons just discussed, there appears to be a substantial contention here, presenting factual disputes, of potentially material mistake under Rule 60(b)(1), involving certain attorney failures and the results of those failures.  We ask the amicus and the Secretary to address whether the special master's factfinding procedures were legally sufficient in this case, including his decision of Ms. DiMasi's Rule 60 motion without conducting a hearing.  There also are serious questions about whether governing legal standards for Rule 60(b) relief nevertheless justify

denial of further factfinding proceedings in these circum-
stances.

1

When discussing Rule 60(b)(1), the special master re-
cited and accepted as applicable, Appx. 187, this court's
three-part approach laid out in *Information Systems*, which
requires a court to consider "(1) whether the non-defaulting
party will be prejudiced; (2) whether the defaulting party
has a meritorious [claim or] defense; and (3) whether cul-
pable conduct of the defaulting party led to the default,"
994 F.2d at 795. The Secretary has not urged departure
from that approach. Secretary's Br. at 4, 12–13.[4]

The special master found for Ms. DiMasi on the first
two elements—finding that the government would not be
prejudiced if Ms. DiMasi's Rule 60 motion were granted
and that Ms. DiMasi had a meritorious claim in the sense
that a different judgment regarding compensation might
well be required if her claim were credited. Appx. 187. So
far, the Secretary in this court seemingly has not contested
those findings or disputed that they apply to the analysis

---

[4]  The special master laid out the Rule 60(b)(1) ap-
proach of *Information Systems* when discussing the addi-
tional-materials motion, but he did not articulate a
different approach to Rule 60(b)(1) when considering the
motion for relief from judgment. The Secretary also had
not made such a distinction. The special master also did
not rely on, and the Secretary has not urged, a different
standard for the "mistake" component of Rule 60(b)(1),
even though *Information Systems* addresses the "excusable
neglect" component (and in a default-judgment context).
The Secretary, however, is not precluded from discussing
whether the *Information Systems* approach (including any
willfulness requirement) applies in this case in the re-
newed briefing.

of Ms. DiMasi's Rule 60 motion.  The special master, how-ever, applied the third factor, Appx. 187–88, without recit-ing the *Information Systems* ruling that "culpable conduct" means that a "party willfully declined to follow a court's rules and procedures," *Information Systems*, 994 F.2d at 796.  He made no finding, and we have not been shown a basis, at least in the current briefing, on which he could have found, culpable conduct under the willfulness stand-ard articulated in *Information Systems*.

2

The special master, citing *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), found that Ms. DiMasi had engaged in culpable con-duct because the actions and decisions of her counsel—in-cluding those actions that Ms. DiMasi alleges support her claim of attorney abandonment—were ultimately the re-sponsibility of Ms. DiMasi.  Appx. 187, 191–99.  But no analysis by the special master or argument by the Secre-tary in this court seeks to justify using *Pioneer* to depart from *Information Systems*—which addressed *Pioneer* in adopting the standard it did.  *See* 994 F.2d at 795–96.

We have more questions than answers at this point about the appropriate standards for binding a client to counsel's decisions in circumstances where a factual "mis-take" of a party or its counsel is later alleged.  The proper scope of Rule 60(b)(1)'s mistake component requires more inquiry, and that inquiry must take account of the poten-tial frequency of do-overs under the appropriate standards. We ask the amicus and the Secretary to address the extent to which *Pioneer* and *Information Systems* apply to the Rule 60(b)(1) mistake component here and whether the special master applied the correct framework to the facts of this case.  We further ask them to address whether Ms. DiMasi's Rule 60(b) motion, considered under the mistake component of Rule 60(b)(1), can prevail without a finding of attorney failure.

In *Pioneer* itself, the Supreme Court did not address the "mistake" component of Rule 60(b)(1). It addressed the "excusable neglect" component (to apply a bankruptcy rule containing the same language). 507 U.S. at 395–99. In that context, the Court reiterated the principle that a client can sometimes be held accountable for the actions of its attorney as agent. *Id.* at 396–97. The Court ruled that denying relief in the case before it was an abuse of discretion. *Id.* at 399.

*Pioneer* involved asserted attorney deficient performance of a role (complying with court deadlines) allocated to counsel under standard principles defining an attorney–client relationship—making the principal (client) responsible for the agent's (counsel's) acts in that assigned role. *See* Restatement 3d Law Governing Lawyers § 27 (updated Oct. 2022). This case, in contrast, involves allegations that could be understood as asserting an attorney usurpation or impairment of the client's own retained authority under those principles. *See, e.g., id.* § 16(1) ("To the extent consistent with the lawyer's other legal duties and subject to the other provisions of this Restatement, a lawyer must . . . proceed in a manner reasonably calculated to advance a client's lawful objectives, as defined by the client after consultation."); *id.* § 16 cmt. c ("The client, not the lawyer, determines the goals to be pursued . . . ."); *id.* § 16 cmts. d, e; *id.* § 20(1) ("A lawyer must keep a client reasonably informed about the matter and must consult with a client to a reasonable extent concerning decisions to be made by the lawyer under §§ 21–23."); *id.* § 20 cmt. b; *id.* § 20 cmt. c ("Important events might affect the objectives of the client, such as the assertion or dismissal of claims against or by the client . . . ."); *id.* § 21 & cmt. d; ABA Model Rule of Professional Conduct 1.2(a) ("Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued."); ABA Model Rule of Professional

Conduct 1.4; *cf.* Restatement 3d Law Governing Lawyers § 22(1) (updated Oct. 2022) ("[T]he following and comparable decisions are reserved to the client except when the client has validly authorized the lawyer to make the particular decision: whether and on what terms to settle a claim . . . ."); *Michaud*, 932 F.2d at 80 (discussing attorney duty to obtain client authorization to dispose of claim); *Garabedian*, 811 F.2d at 803 (same). We have been presented no analysis of the relevance of such distinctions among different attorney responsibilities. We ask that the parties address how Ms. DiMasi's counsel-related allegations apply to the Rule 60(b) analysis.

3

We note several other potential problems with the special master's analysis denying Ms. DiMasi's Rule 60 motion. The special master relied on an "extraordinary circumstances" requirement without distinction among the subsections of Rule 60(b). *See* Appx. 184, 191–92, 194. But the Supreme Court and our court have explained that the requirement that a movant show the existence of "extraordinary" (or "exceptional") circumstances applies only to motions seeking relief under Rule 60(b)(6), not 60(b)(1)—reflecting the importance of not allowing the catch-all (b)(6), which lacks a one-year-filing limit, to override the constraints on (b)(1) (or other) grounds for relief. *See Kemp*, 142 S. Ct. at 1861; *Pioneer*, 507 U.S. at 393 ("To justify relief under subsection (6), a party must show 'extraordinary circumstances' . . . ."); *Information Systems*, 994 F.2d at 795 ("While subsection (6) requires a showing of 'extraordinary circumstances,' subsections (1) and (6) of Rule 60(b) 'are mutually exclusive,' and the required showing of extraordinary circumstances under subsection (6) does not apply to . . . subsection (1)." (citations omitted)). That requirement does not apply to analysis of Ms. DiMasi's motion under, for example, Rule 60(b)(1).

The special master also stated that "attorney errors amounting to gross negligence are not considered exceptional circumstances that warrant reopening the case." Appx. 193. The special master cited four decisions in support of this proposition. Appx. 184–85. But the cited decisions do not seem to support the statement—even aside from the fact that the point being discussed in those decisions was how to apply the exceptional (or extraordinary) circumstances standard under Rule 60(b)(6), not 60(b)(1).

Three of the cited decisions state that gross negligence of an attorney *can be* an extraordinary circumstance. *Lal v. California*, 610 F.3d 518, 521 (9th Cir. 2010) ("We hold . . . that an attorney's gross negligence constitutes an extraordinary circumstance warranting relief from a judgment . . . ."); *Community Dental Services v. Tani*, 282 F.3d 1164, 1172 (9th Cir. 2002) ("Where, as here, an attorney engages in grossly negligent conduct resulting in [a default] judgment, the client merits relief under Rule 60(b)(6), and may not be held accountable for his attorney's misconduct."); *Boughner v. Secretary of Health, Education & Welfare*, 572 F.2d 976, 978 (3d Cir. 1978) ("We reverse, however, on the basis that the motion to vacate should have been granted under Rule 60(b)(6). The conduct of [counsel] indicates neglect so gross that it is inexcusable. . . . We hold, therefore, that in the factual setting here, which warrants relief under Rule 60(b)(6), appellants are not bound by the acts of their attorney for the purposes of the rule."). And the fourth opinion cited by the special master, *Heim v. Commissioner*, 872 F.2d 245 (8th Cir. 1989)—for the proposition that "any errors committed by [counsel], even accepting the designation of gross negligence, do not constitute an adequate showing of 'exceptional circumstances,'" Appx. 185 (alteration in original) (quoting *Heim*, 872 F.2d at 248)—is not an opinion of the court. It is Judge Gibson's separate opinion, which was not joined by the rest of the panel. *See Superior Seafoods, Inc. v. Tyson Foods, Inc.*, 620 F.3d 873, 878 (8th Cir. 2010) (citing "*Heim v.*

*Comm'r*, 872 F.2d 245, 249 (8th Cir. 1989) (John R. Gibson, J., writing separately)"). The two other members of the panel concurred only "in the result," not "reach[ing] the question of whether the taxpayers have made an adequate showing of exceptional circumstances under [Rule] 60(b)." *Heim*, 872 F.2d at 249 (Lay, C.J., concurring). We ask the amicus and the Secretary to address whether the foregoing cases (and any others it finds applicable) regarding attorney conduct that amounts to "gross negligence" extend to the facts of this case.

## III

To be clear, the foregoing represents only our current understanding of the issues and does not represent any final conclusion on any issue of law or characterization of the record. This order does not close the door on arguments regarding any of the issues, or challenges to any of the assumptions, that are reflected in this order. Counsel should present all applicable arguments that advance their respective positions.

The court will appoint counsel to file a brief (and argue) as amicus in support of Ms. DiMasi's appeal. Upon announcement of the appointment on our docket, counsel will have 60 days to file such a brief. The Secretary will have 40 days from that filing to respond, and amicus 30 days thereafter to reply. The length and content standards for formal briefs of an appellant and appellee shall govern amicus and the Secretary respectively.

Two issues concerning confidentiality need to be addressed. First, the ability of amicus to carry out the assigned task depends on amicus having access to the confidential materials in the Claims Court record. Within one week of this Order, each of Ms. DiMasi and the Secretary shall file with this court a statement authorizing amicus to have access to the full Claims Court record under a standard protective order or identifying the portions of the record for which such access is being denied. If access is

DIMASI v. HHS                                                                    17

denied in whole or in part, the court will consider how to proceed.

Second, either in the filings required in the preceding paragraph (one week after this Order) or in separate filings made within two weeks after those filings, Ms. DiMasi and the Secretary shall also address the broader issue of confidentiality against the public. The new briefs now ordered will be more useful to this court, including in the writing of any opinion, if confidentiality is waived, in whole or in large part. Much of the material currently marked confidential in the appendix is already disclosed in public documents, including the special master's opinions and Ms. DiMasi's briefing in this court. Ms. DiMasi and the Secretary shall inform the court whether they will waive confidentiality as to all the appendix materials, and if not, they shall precisely specify the exact portions they wish to retain confidential status. The court will consider how to proceed after receiving those submissions.

**IT IS SO ORDERED**.


FOR THE COURT

December 19, 2022                    /s/ Peter R. Marksteiner
       Date                          Peter R. Marksteiner
                                     Clerk of Court